**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSHUA LITTLE, et al, <br><br> Plaintiffs, <br><br> v. <br><br> AMBIT ENERGY HOLDINGS, LLC and AMBIT NORTHEAST, LLC, <br><br> Defendants. | Civil Action No.: 16-cv-8800 (PGS) <br><br> MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter is before this Court on Defendants' motion to dismiss Plaintiffs' First Amended Class Action Complaint. Plaintiffs Joshua Little ("Little"), Samantha Mason ("Mason"), and Gregory Stewart ("Stewart") allege, on their own behalf, as well as on behalf of all other similarly situated, that Defendants, Ambit Energy Holding, LLC and Ambit Northeast, LLC, (collectively "Defendant" or "Ambit") have engaged in unconscionable and deceptive commercial practices in violation of the New Jersey Consumer Fraud Act (NJCFA) and other related tortious acts.

I.

Little, Mason, and Stewart enrolled as Ambit customers in New Jersey respectively in September 2013, December 2011, and November 2012. (ECF No. 24 "Amend. Compl." ¶¶ 13-15). Ambit is an energy service providing utilities to New Jersey residents in alternative to the existing utility companies such as PSE&G, pursuant to the Electric Discount and Energy Competition Act of 1999 (EDECA), N.J.S.A. 48:3-49 *et seq*. (Id. at ¶1). Ambit markets itself as a less-expensive alternative to existing utilities companies. (*Id.* at ¶¶ 1-2). Ambit offers a "budget

1

billing" payment plan intended to avoid fluctuations in monthly energy expenses. (*Id.* ¶4). According to its website, Ambit calculates the average monthly amount by determining the wattage of electricity based on prior usage. Ambit sets a monthly rate of wattage based on an average. Both the prior usage and the rate of wattage are estimates, subject to variations based on several factors. Prior usage may vary depending weather, for example. Rate of wattage may vary because Ambit purchases electricity on the grid, and the price fluctuates based on demand. Specifically, to reach the average budgeted amount, Ambit multiplies a budgeted (estimated) usage amount, times a budgeted (estimated) rate. The resulting total is the "budget bill amount." (*See* Amend. Compl. Ex. 7 showing the amount paid by Plaintiff Little) (Def. Br. Pg.17). A consumer's use of electricity varies seasonally, but a consumer's take home pay does not. The budgeted amount evens out the cost of electricity by averaging the price over a year, so that the amount paid fits within a consumer's budget. According to the Complaint, when a customer terminates Ambit's service, the customer receives a final bill identified as a "budget settlement," wherein the customers is billed for the difference between the budget bill amount and the actual usage and actual rates. The difference can be substantial.

On November 28, 2011, Plaintiffs brought a class action on behalf of Ambit's New Jersey customers claiming to have been financially harmed by Ambit's "budget billing" plan in which they were enrolled. After Defendants moved to dismiss the original complaint, the case was administratively terminated without prejudice, allowing the parties to reopen the case. (ECF No. 17). Plaintiffs filed an amended complaint on June 17, 2017 (ECF No. 24). On July 28, 2017, Defendants renewed their motion to dismiss the amended complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim, Fed. R. Civ. P. 12(b)(6).

*The Plaintiffs*

In support of their claims, Plaintiffs provide individual accounts of their experience with Ambit, along with billing statements and correspondence with Defendants.

*Joshua Little*

Little signed up with Ambit in 2013. He decided to terminate the service in May 2016, and when he proceeded to advise Ambit accordingly, he received a charge of $5,132.08. Little alleges that that was the first time he was advised that he owed thousands of dollars to Ambit. (Amend. Compl. at ¶¶40-42, *See* Ex. 6). Those charges represented "adjustment" or "Budget Settlement" due to the increase in actual rate charged to budget plan customers. Little contends that none of the budget plan billing statements contained a breakdown of energy used, costs, "actual rates," and balances owed.

*Samantha Mason*

Mason signed up for Ambit electric in December 2011 and gas in January 2012. She decided to switch back to her existing utility in 2015 and in her last Ambit bill, she received a charge of $2,405.41. (Amend. Compl. ¶¶46-49, See Ex. 8). After advising Ambit that she also wanted to terminate gas services, she received a charge in the amount of $671.07 (*Id. See* Ex. 9). She also alleges not having been informed of the charges, or "actual rates" differences, before she decided to terminate the account and received the last billing statement. Upon receiving the charges, Mason complained to the company. In a conversation with one of the company's representatives, she explained that the budged bill amount was not broken down to show either credit or accumulated balance. The representative acknowledged that in that case, the accrued charges would hit as a surprise when settling the balance. (*Id.* at ¶ 55).

*Gregory Stewart*

Stewart signed up for Ambit services in late 2012. He contacted Ambit to terminate their services in December 2015. On January 2016, he received his final Ambit bill and learned that he was being charged a total of $2,192.60. He also contends that he had not previously been informed of an accrued balance. (Amend. Compl. ¶¶56-58, *See* Ex. 12).

*First Amended Complaint: The Claims*

In the first Amended Complaint, Plaintiffs raise the following causes of actions:

In *Count I*, Plaintiffs allege that Defendants have engaged in unconscionable and deceptive commercial practices under the New Jersey Consumer Fraud Act (NJCFA) (*N.J.S.A.* 56:8-1 et seq.). These actions include knowingly and falsely (1) promising Plaintiffs that by switching to Ambit they would save money compared to its competitors (utility companies) prices; (2) that by enrolling in Ambit's budget billing plan they would be able to pay their energy expenses in an even, budgeted manner, and not accumulate a significant balance; and (3) knowingly concealed and misrepresented the rates that were actually being charged and knowingly concealed that the budget payments assessed on their monthly bills were not covering all Ambit's charges. (*Id.* at ¶73-75). Such practices allegedly resulted in hidden fees and "budget settlement" or "adjustment" charges that were billed to Plaintiffs upon termination of their services with Ambit. (*Id.* at ¶76). Plaintiffs argue that Defendants misrepresented and/or omitted the total amount of energy for which they were charged. (*Id.* at ¶77). Plaintiffs ask for damages, an injunction, and declaratory relief pursuant to *N.J.S.A.* 56:8-2.12 and 56:8-159 (NJCRA), in addition to court costs, and reasonable and necessary attorneys' fees in connection with this action. (*Id.* at ¶81-82).

In *Count II*, Plaintiffs raise claims of unjust enrichment resulting from the Defendants wrongful conduct. (*Id.* at ¶83-87). They argue that Defendants collected improper and excessive

energy charges, and it would be unjust and inequitable for them to retain the benefits of their wrongful conduct. (*Id.*)

In *Count III*, Plaintiffs raise claims of unconscionability regarding Defendants' budget billing policies and alleged misleading practices. (Id. at ¶88-89).

II.

Defendants filed a motion to dismiss Plaintiffs' first amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

A. *Rule 12(b)(1) Lack of Subject Matter Jurisdiction*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Symczyk v. Genesis Health Care Corp.*, 656 F.3d 189, 194 n.4 (3d Cir. 2011) (citation omitted). A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face ... [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891.

B. *Rule 12(b)(6) Failure to State a Claim*

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The requirements of Rule 8 apply even where the Rules command particularity, as in the pleading of fraud under Rule 9(b). *In re Westinghouse Sec. Litig.*, 90 F.3d at 702. Therefore, where alleging fraud, Plaintiffs must state the circumstances constituting fraud with particularity, but must still endeavor to make their allegation clear and concise. "Pleadings containing collectivized allegations against 'defendants' do not suffice." *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999).

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable

6

inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

III.

*Jurisdiction of the New Jersey Board of Public Utilities (NJBPU)*

With regards to the Rule 12(b)(1) motion, Defendant argues that the NJCFA claim raised by Plaintiffs is subject to exclusive, or at least primary, jurisdiction of the Board of Public Utility Commissioners of the State of New Jersey ("NJBPU" or the "Board") *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566 (N.J. Sup. Ct. 1978) (Def. Br.pg.7). In *Daleeman*, the Supreme Court of New Jersey reasoned that consumers had raised a claim under the New Jersey Consumer Fraud Act, due to the adjustments made by a privately owned public utility company which resulted from variations in the cost of purchase and supplies of gas. The mechanism used by the company, the "Purchase Gas Adjustment Clause" was permitted under the NJBPU. Therefore, review and application of the Purchase Gas Adjustment Clause to the facts of the case, would require review of the Board's administrative order and regulations. For that reason, the Supreme Court of New Jersey opined that Board had exclusive jurisdiction over the matter. *Daaleman*, 390 A.2d at 271-72.

First, this Court reviews whether, pursuant to Electric Discount and Energy Competition Act of 1999 (EDECA) (*N.J.S.A*. 48:3-49), the Board intended to have exclusive or primary jurisdiction over matters such as this one. Competitive business entities appear to be regulated by EDECA in a similar manner as public utilities companies. For instance, as indicated in the Act, "[a]n electric public utility or a related competitive business segment of an electric public utility shall not offer any competitive service to retail customers within this State without the prior express written approval of the [B]oard." N.J.S.A. § 48:3-55. Further, N.J.S.A. § 48:3-85, regulates

Consumer protection standards. The determination of whether an administrative agency has jurisdiction over a particular matter "is one of statutory construction, that is, determining the legislative intent." *Hinfey v. Matawan Reg'l Bd. of Educ.*, 77 N.J. 514, 529, 391 A.2d 899 (1978).

> The BPU is responsible for supervising and regulating public utilities in the State and has the power to set "just and reasonable standards, classifications, regulations, practices, measurements or service to be furnished, imposed, observed, and followed" by a public utility. N.J.S.A. 48:2-13; N.J.S.A. 48:2-25(a). The BPU relies upon N.J.S.A. 48:2-13(a) for its general jurisdiction over this matter."

*See Borough of Haledon v. Borough of North Haledon*, 817 A.2d 965, 971 (N.J. Super. Ct. App. Div. 2003). The section states: "The [B]oard shall have general supervision and regulation of and jurisdiction and control over public utilities as defined in this section and their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this Title." (*N.J.S.A.* 48:2-13(a)).

Additionally, with regards to rights and remedies under the Statute, *N.J.S.A.* 48:3-84 (a), states:

> The rights, remedies and prohibitions accorded by the provisions of this act are in addition to and cumulative of any right, remedy or prohibition accorded by the common law or any statute of this State and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition.

*N.J.S.A.* § 48:3-84 (b) further states "Administrative and judicial remedies provided in this act may be pursued simultaneously."

Therefore, the Board does not have exclusive jurisdiction over this matter.

Alternatively, Defendant argues that, pursuant to the doctrine of primary jurisdiction, the court should stay this case to permit the NJBPU to resolve the budget-billing issues first by ordering a stay of the present case. (Def. Br.pg.9).

The doctrine of primary jurisdiction:

> applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). *See also Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (doctrine applies "to claims properly cognizable in court that contain some issue within the special competence of an administrative agency").

The Third Circuit has held that the doctrine applies when decision-making is:

> divided between courts and administrative agencies [and] calls for judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. . . . It is now generally accepted . . . that the principal justification [for the doctrine] is the need for an orderly and sensible coordination of the work of agencies and courts.

*Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 736 (3d Cir. 1983) (internal citation omitted).

"'No fixed formula exists for applying the doctrine of primary jurisdiction,' so matters should be evaluated on a case by case basis." *Natixis Fin. Prods., LLC v. Public Serv. Elec. & Gas Co.*, 2014 U.S. Dist. LEXIS 58943, *8 (D.N.J. April 29, 2014) (quoting *W. Pac. R.R. Co.*, 352 U.S. at 59). The Third Circuit has found the following four factors helpful in determining whether to apply the doctrine:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

*Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011).

In interpreting the significance of *Daaleman* and the applicability of the NJCFA, the Third Circuit Court stated,

> As the Supreme Court of New Jersey stated in *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 390 A.2d 566, 568 (N.J. 1978), the Consumer Fraud Act was "aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate." "The legislative concern [underlying the Act] was over sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Id.* at 569.

*J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1273-1274 (3d Cir. 1994).[1] The issues raised by Plaintiff appear to be one regarding Defendant's business conduct, and whether it was sufficiently deceptive to constitute consumer fraud, as opposed to being solely based on regulations established by the Board. Resolution of this matter does not require complex technical knowledge. Therefore, there is no reason for the Court to refrain from exercising jurisdiction over this case.

---

[1] It must be noted that both, *Daaleman* and *J & R* decisions date prior to 1999 when EDECA was enacted.

# IV.

1. *The New Jersey Consumer Fraud Claim*

Defendant argues that Plaintiffs' NJCFA claim cannot proceed as pleaded because the Amended Complaint does not contain sufficient facts to plausibly plea that Defendant knowingly or intentionally omitted certain information from bills sent by Plaintiffs' incumbent utilities. Defendant contends that Plaintiffs failed to satisfy the requirements of Rule 8(a) when failing to plausibly allege facts sufficient to support the "ascertainable loss" element. (Def. Br.pg.13). Further, Defendant claims that Plaintiffs fail to meet the heightened pleading standard set by Fed. R. Civ. P. 9(b) applicable to fraud claims, which states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Defendant also argues that Plaintiffs fail to allege facts to support an inference that their affirmative representations were false. (Def. Br.pg.11-12). Nor can they show that the failure to disclose the "actual rate" only disclosing the "budget rate" is an affirmative act rather than an omission. (Def. Br.16). Further, assuming the disclosure of the budget rate where to be deemed an affirmative act, Plaintiffs have not provided sufficient facts in support of the claim that the charged rate was unlawful pursuant to the NJCFA. (*Id*. at 17).

Defendant claims that Plaintiffs failed to claim "ascertainable loss" under the NJCFA. Defendants argue that Plaintiffs cannot show that the benefit of their bargain was to save money and that even if the statements mentioning saving money were to be analyzed, they would not be sufficient to support a claim since they constitute mere puffery. (Def. Br. Pg. 19-20).

Plaintiffs rebut Defendant's argument by enumerating paragraph 75 of the Amended Complaint which states:

i. Defendants have knowingly and falsely promised Plaintiffs and the Class that by switching to Ambit they would save money compared to what the consumers' utilities would have alleged
ii. Defendants have knowingly and falsely promised Plaintiffs and the Class that by enrolling in Ambit's budget billing plan they would be able to pay their energy expenses in an even, budgeted manner, and not accumulate significant balances.
iii. Defendants have knowingly concealed from Plaintiffs and the class the rates at which they were actually being charged.
iv. Defendants have knowingly concealed from Plaintiffs and the Class that the budget payments assessed on their monthly bills were not covering all of Ambit's charges.
v. Defendants have knowingly misrepresented to Plaintiffs and the Class the rates Ambit was charging.

The Amended Complaint alleges that all Plaintiffs were not aware there would be a settling amount at the end of service, nor were they aware of the actual amount of energy consumed.

To state a claim under the NJCFA, a plaintiff must allege three elements: (1) the defendant's unlawful practice, (2) the plaintiff's ascertainable loss, and (3) a causal relationship between the two. *Intl Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389, 929 A.2d 1076 (2007) (internal quotation marks omitted). Defendant argues that Plaintiffs failed to plea any affirmative acts that constitute unlawful practice under NJCFA. (Def. Br. 16.) The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.]

*N.J.S.A.* 56:8-2.

The CFA does not define what constitutes an "ascertainable loss," but the New Jersey Supreme Court has recognized that the loss must be capable of calculation, and not just hypothetical or illusory. *Thiedemann v Mercedes-Benz USA, LLC*, 183 N.J. 234, 248, 872 A.2d 783 (2005); *see also Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057—FLW, 2008

U.S. Dist. LEXIS 105413, 2008 WL 5381227, at *7 n. 3, (D.N.J. Dec. 9, 2008) ("A sufficiently plead ascertainable loss is one with enough specificity as to give the defendant notice of possible damages."). "A cognizable injury . . . must consist of more than just unmet expectation." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335 (D.N.J. 2014).

There are two relevant theories to ascertainable losses under the CFA: (1) the out-pocket-loss theory, and (2) the loss-in-value or benefit-of-the-bargain theory. *Id.* An out-of-pocket-loss theory will suffice only if the product received was essentially worthless. *Id.* A benefit-of-the-bargain theory requires that the consumer be misled into buying a product that is ultimately worth less than the product that was promised. *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011).

Plaintiffs identify an unlawful practice in Defendant's failure to disclose the actual rate. They argue that by concealing the actual rates charged, Defendants caused them to pay more for their utilities than they would have. (Pl. Opp. pg. 20). Defendants' failure to disclose that they were accumulating a balance, caused them an ascertainable loss. In fact, Plaintiffs support that they were forced to accrue a valid debt that they had no idea was accruing. (*Id.* at 20-21).

Plaintiffs have provided sufficient evidence to support a connection between the alleged wrongful action and their ultimate loss. Therefore, the claim is sufficiently supported for purposes of a motion to dismiss.

### 2. *The Unjust Enrichment*

Defendant argues that Plaintiffs cannot maintain a claim of unjust enrichment because New Jersey Law does not recognize tort-based unjust enrichment claims. In the alternative, even if Plaintiffs' claim were to be based on quasi-contract, or a contractual base, rather than tort, they fail to meet the elements of a claim under New Jersey law. (Def. Br.pg.24-26).

To succeed on a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. Sup. Ct. 1994); *see also Callano v. Oak-wood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966). Additionally, for an unjust enrichment claim to succeed, there must be a showing that "the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Callano*, 219 A.2d at 335; *see also VRG Corp.,* 641 A.2d at 526.

Plaintiffs argue that the charges imposed at termination of their contracts with Ambit were improper and excessive. Plaintiff has provided sufficient support necessary to survive at motion to dismiss at this juncture, however, the court will review the validity of this claim again at the summary judgment stage.

3. *The Unconscionability Claim*

Defendants argues that the claim for unconscionability should be dismissed because an affirmative claim for damages is not recognized by New Jersey Law, and even if it were, it would lack merit. (Def. Br.pg.27). Plaintiff rebuts arguing that they seek a declaration, along with other awards that the Court may deem appropriate. (Pl. Opp. Pg. 36).

Under New Jersey law, "a contract is unconscionable if its terms are manifestly unfair or oppressive and are dictated by a dominant party." *Howard v. Diolosa*, 241 N.J. Super. 222, 574 A.2d 995, 999 (App. Div. 1990) (citing *Kuzmiak v. Brookchester*, 33 N.J. Super. 575, 111 A.2d 425 (App. Div. 1955). "To establish unconscionability, a plaintiff must show 'overreaching or imposition resulting from a bargaining disparity between the parties,' or 'patent unfairness' such that 'no reasonable person not acting under compulsion or out of necessity would accept its terms.'"

*Cole v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 42156, 2016 WL 1242765, at *6 (D.N.J. Mar. 30, 2016) (citing *Rotwein v. Gen. Accident Grp. & Cas. Co.*, 103 N.J. Super. 406, 247 A2d 370 (N.J. Super. Ct. Law. Div. 1968)). Based on the above standard, the Court finds that the claim does not apply to the facts of this case. This claim is dismissed accordingly.

As a last point, Defendant argues that Plaintiffs' Complaint should be dismissed pursuant to Rule 23 (b)(2) because it seeks primarily money damages. (Def. Br.pg.30). At this early stage there is no basis to doubt Plaintiffs' Rule 23(b)(2) allegations. Defendant may raise objections regarding class certification in a Rule 23 motion.

**CONCLUSION**

Defendant's motion to dismiss is denied in part and granted in part. Plaintiffs have sufficiently supported the claims set forth in Count I and II. Plaintiff's Count III (Unconscionability) is dismissed at this time.

ORDER

This matter, having been brought before the Court on Defendant the State of New Jersey's motion to dismiss [ECF No. 26], and the Court having considered the briefs and submissions of the parties, and having heard oral argument;

IT IS on this 20th day of December, 2017;

**ORDERED** that Defendant's motion to dismiss (ECF No. 26) is DENIED IN PART AND GRANTED IN PART; it is further

**ORDERED** that Count III of the Amended Complaint is DISMISSED.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.